UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEVIN McAULEY,

          Plaintiff,

  v.                                    Case No. 11-C-649

MICHAEL ASTRUE,

          Defendant.

## DECISION AND ORDER

Kevin McAuley appeals the denial of disability benefits following a hearing before an administrative law judge (ALJ) and an appeal to the Appeals Council. Following the adverse decision, McAuley reapplied for benefits and submitted additional records. The SSA allowed his application, finding him disabled as of January 28, 2010, the date following the ALJ's adverse decision. Accordingly, currently at issue is the period between January 2007 (alleged onset date) and January 2010, when benefits were allowed.

McAuley, in his forties throughout the relevant period, suffers from undeniable mental health and / or personality issues that are well-documented in the record. McAuley's work history has been characterized by a start-and-stop pattern, where he begins work at a business (e.g., a fast food restaurant) and soon finds himself fired after an altercation with a co-worker or supervisor. In one instance, for example, he threatened a shift supervisor, and in another he was fired over his disagreement with company policy. (Tr. 208.) His job at Fazoli's, a fast food Italian restaurant, ended after a shouting match with a co-worker. (Tr. 41.) A post-decision memo from Goodwill

Industries, which had hired and fired McAuley, explained that Plaintiff's "past work history is significant for getting into shouting matches and power struggles with coworkers and supervisors and then losing the jobs; was not dependable while in the program; previous mental health care providers in the records indicate that he is always angry under the surface and that anger comes out quickly." (Tr. 352.)

The ALJ found that McAuley had the severe impairments of attention deficit hyperactivity disorder (ADHD) and bipolar disorder. (Tr. 19.) However, the ALJ found that McAuley was not entirely credible as to the extent of his symptoms, and that the objective medical evidence did not fully support his disability claim. Specifically, the ALJ found that medication "had been working" to treat his depression, and his medical records showed that his treating providers recommended conservative treatment, which was inconsistent with the severity of the symptoms claimed by Plaintiff. (Tr. 21.)

The medical record was suggestive of disability. Plaintiff was diagnosed with ADHD, learning disorder and depressed mood disorder. Dr. Kaplan, an evaluating psychologist, concluded that Plaintiff was unable to work due to his mental health limitations, although he believed a medication program focused on ADHD might improve his situation. (Tr. 295.) Dr. Yong Li completed a questionnaire and noted similar limitations; Dr. Li indicated that Plaintiff's limitations would not interfere with his ability to perform simple work tasks, but they would require him to be absent from work more than four days per month. (Tr. 303.)

Sarah Bassing, a counselor who worked with Plaintiff on a weekly basis, wrote a letter explaining some of Plaintiff's behavior, particularly his quitting a job at Fazoli's, a fast-food Italian restaurant. She noted that she and her employer (the Emergency Shelter of Fox Valley) had deemed

2

him "chronically homeless." (Tr. 320.) She stated that in her opinion, Dr. Kaplan's diagnosis was accurate in identifying his disability (learning disorder, ADHD, depression), and, in her view, "Kevin's employment and housing history speak for themselves in providing the severity of his disability requiring him to have the fixed income of Social Security Disability in order to survive." (Tr. 321.)

Plaintiff also underwent a consultative psychological exam with Dr. Steven Klein. Klein noted that Plaintiff was "always angry under the surface" and appeared withdrawn and was unable to read common social cues, making his interactions with others difficult. (Tr. 324.) On the plus side, Plaintiff had no trouble with anxiety or stress and did not have the typical manic episodes associated with bipolar disorder. Klein noted marked limitations in interacting with supervisors and co-workers (Tr. 331), gave a diagnosis of major depression, and assessed a GAF (global assessment of functioning) at 55, which is in the range where moderate limitations in social functioning impact one's daily life.

The ALJ found that the moderate (rather than severe) GAF score supported his conclusion that Plaintiff could perform simple routine tasks with minimal exposure to others. In doing so, the ALJ rejected the psychologists' conclusions that Plaintiff was unable to work. The ALJ found that the conservative treatment prescribed by the treating sources undermined the idea that Plaintiff was disabled within the meaning of the Social Security Act.

**II. Analysis**

On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir.

3

2009). A decision denying benefits need not discuss every piece of evidence, but when an ALJ fails to support her conclusions adequately, remand is appropriate. *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011).

Plaintiff cites a number of issues with the Commissioner's decision, but one that stands out from a review of the record involves the residual functional capacity, or RFC. As cited above, the record was replete with indicia that Plaintiff had substantial difficulty interacting with co-workers and supervisors. Dr. Klein had found Plaintiff to have "marked" difficulties in such areas, and it is undeniable that Plaintiff's past history supports such a conclusion.

But the RFC did not take such limitations into account. At the hearing, the ALJ asked the vocational expert whether jobs exists for someone with Plaintiff's other limitations, as well as the limitation that Plaintiff could not interact with the public. (Tr. 52.) The vocational expert identified a number of jobs that existed in the economy with such limitations, noting that Plaintiff's past work in telemarketing would be unavailable due to contact with the public. (Tr. 52.) Given the lack of physical limitations on the Plaintiff, it was not surprising that the vocational expert identified thousands of jobs that Plaintiff could perform at the unskilled level if his only significant limitation was interaction with the public. But the expert was never asked about an individual who had marked difficulties in interacting with co-workers and supervisors, which was the problem Plaintiff had experienced. Plaintiff's past work problems were not caused by interactions with the public, but were due to outbursts with people he worked with and for. Dr. Klein had noted Plaintiff's "marked" limitations in interacting with co-workers, but this significant limitation was never addressed by the vocational expert, and the ALJ never suggested that he was rejecting that limitation. In fact, he relied partly on Dr. Klein's analysis in finding Plaintiff *not* disabled. An

4

ALJ's hypothetical questions to a VE "must include all limitations supported by medical evidence in the record." *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir.2002). Thus, either the ALJ had to include the marked limitations described above in his hypothetical question, or he had to explain why he was rejecting the psychologists' conclusion that Plaintiff had such limitations.

The government suggests that this problem is cured because the ALJ's decision included a limitation, in his RFC, of "minimal exposure to others including coworkers and the public." (Tr. 19.) This language specifically includes coworkers and, by using the term "including," can also incorporate supervisors. There are at least two problems with this suggestion. First, even if the ALJ's statement in his decision can be broadened as the government suggests, there is no indication in the decision or hearing that the ALJ considered such a broad limitation. That is, despite the stated RFC, there is no discussion of a limitation so broad that it actually includes supervisors and coworkers. More importantly, the ALJ's conclusion about the kinds of jobs Plaintiff could perform was directly linked to the hypothetical question the ALJ asked the vocational expert (VE). Although the decision states that he asked the vocational expert whether jobs exist for someone with Plaintiff's RFC (Tr. 24), the question actually *asked* during the hearing was only about a claimant who could not interact with the general public. (Tr. 52.) Thus, the jobs the VE testified about, and which the ALJ found Plaintiff could perform, were based on a flawed hypothetical question. There was, in short, in no indication in the hearing or decision that there were any jobs available that involved minimal contact with supervisors or coworkers.

What all of this means is that the residual functional capacity finding—that is, the notion that there were thousands of jobs in the economy that the Plaintiff could perform—is incomplete because it did not incorporate what seems to be the key "marked" limitation that Plaintiff suffers,

5

namely, an inability to interact with coworkers or supervisors  A re-do at the administrative level will also allow the Plaintiff to incorporate some of the more recent information, such as a suicide attempt, he believes is relevant to his earlier disability claim.

The decision of the Commissioner is **REMANDED** under sentence four of § 405(g) of the Social Security Act.

**SO ORDERED** this    24th    day of September, 2012.

 s/ William C. Griesbach    
William C. Griesbach  
United States District Judge
